IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**MINDY S. BROWN,**

    **Plaintiff,**

**v.**                                                             **Civil Action No. 3:17-cv-03363**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 10). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

Background

Claimant, Mindy Sue Brown, filed an application for DIB on December 10, 2012. Claimant filed an application for SSI on December 14, 2012. Claimant alleged disability beginning November 29, 2012 . The claims was denied initially on February 12, 2013, and upon reconsideration on May 24, 2013. Claimant filed a request for hearing on July 11, 2013. A hearing was held on October 8, 2015, before an Administrative Law Judge (ALJ) in Huntington, West Virginia. The ALJ denied Claimant's application on December 18, 2015. Claimant requested the Appeals Council review the ALJ's decision. The Appeals Council denied Claimant's request for

review on April 20, 2017 (Tr. at 1-6). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f)

(2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity during the period of time from his alleged onset date of November 29, 2012, through his date last insured (DLI) of March 31, 2019 (Tr. at 27). Under the second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments of diabetes mellitus with neuropathy and obesity. (*Id.*) However, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 29). The ALJ found that Claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the following exceptions: during an eight-hour workday, she can sit a total of eight hours (four hours at a time) and can stand and/or walk a total of six hours (three hours at a time); can occasionally operate foot controls with both feet; can never climb ladders ropes or scaffolds; and can never be exposed to unprotected heights (Tr. at 30).

The ALJ concluded that Claimant is capable of performing any past relevant work and may perform her past positions as a cashier and a telemarketer (Tr. at 32). Accordingly, the ALJ denied Claimant's applications for DIB and SSI (Tr. at 34).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on July 8, 1986. Claimant was in special education classes in elementary school and middle school in math and reading (Tr. at 50). Claimant last completed the eleventh grade. (*Id.*) She has her GED. Claimant lives with her husband in Huntington, West Virginia (Tr. at 65). She has a driver's license and drove herself to the hearing (Tr. at 68).

## The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

Claimant had a long history of non-compliance with her diabetes treatments. She was diagnosed with Type 2 diabetes in March 2012 and was prescribed medication (Tr. at 538). She thought this made her blood sugar higher so she took herself off the medication within a month (Tr. at 538).

On May 30, 2012, Claimant stated to Dr. James Rollins that she was not testing her blood sugar levels and had declined to see a diabetes educator (Tr. at 540). Similarly, on June 13, 2012, she was again advised by Dr. Sydnee McElroy to monitor her glucose and diet (Tr. at 544). On November 28, 2012, Claimant admitted she had not been taking her diabetes medication and was assessed with "medical noncompliance" (Tr. at 989, 992).

On November 28, 2012, Claimant was seen at St. Mary's Medical Center for suicidal ideation with depression following the death of her mother (Tr. at 429). Claimant denied having similar symptoms in the past (Tr. at 429). Her physical examination was normal and was diagnosed with hallucinations, suicidal ideations, grief reaction and medical noncompliance (Tr. at 430, 432).

Claimant began outpatient treatment with Prestera Center on December 3, 2012, where she was treated for severe depression, anxiety and hallucinations (Tr. at 557). During her intake examination, Claimant was unkempt and withdrawn, but her speech and thought content were normal and she was fully oriented, with normal memory, blunted affect and deficient coping skills (Tr. at 558-559). Prestera personnel diagnosed Claimant with major depressive disorder, severe single episode with psychotic features (Tr. at 560). Claimant received individualized and group therapy (Tr. at 730). By February 15, 2013, Claimant "rejected additional treatment" and was discharged from the partial hospitalization program (Tr. at 723).

Claimant's noncompliance continued after her alleged onset date. For example, on March 6, 2013, her diabetes was uncontrolled and Kane Maiers, M.D., observed that "she did not titrate Levimir as instructed last visit" (Tr. at 552). On January 13, 2014, Kara Siford, M.D., examined Claimant (Tr. at 766). Claimant reported that she had taken herself off Prozac and Metformin two months prior. (*Id.*)

On February 7, 2014, Claimant was admitted to the Cabell Huntington Hospital Emergency Department (Cabell ER) with complaints of ear pain (Tr. at 884). Claimant was normal on examination and discharged with a prescription for Tamiflu and Naproxen (Tr. at 885-886).

Claimant returned to Cabell ER on May 10, 2014, with tingling and numbness in her legs (Tr. at 846). Prior to admission, she was found leaning against a wall and complaining that she could not walk owing to upper and lower extremity numbness (Tr. at 846). The attending physician noted that Plaintiff "changes [her] story several times during presentation to both myself and medical student" (Tr. at 846). On physical exam, Claimant was in no acute distress; she was fully oriented and alert, but said she had no sensation in her left lower extremity (Tr. at 847). Yet when the examining physician performed a test on her left foot, Claimant "shrieks and withdraws her foot" (Tr. at 847).

Dr. Siford examined Claimant for poorly controlled diabetes (Tr. at 746). Dr. Siford observed that Claimant's blood sugar "reports are contradicting" (Tr. at 746). Claimant reported to Dr. Siford that she had not been able to check her blood sugar levels because someone stole her diabetes kit, but then reported high blood sugar readings. Dr. Siford noted that Claimant "still does not appear to have a grasp on dietary changes that are necessary as a poorly controlled diabetic" (Tr. at 746).

Claimant was admitted to St. Mary's Medical Center on July 28, 2014, with diabetic ketoacidosis (Tr. at 959). She was "also found to be newly pregnant" (Tr. at 986). Claimant was treated with an insulin drip and IV fluids and refused to stay in the hospital against medical advice (Tr. at 986). On August 27, 2014, a diabetic eye exam performed by University Eye Surgeons revealed no evidence of diabetic retinopathy (Tr. at 1037).

Claimant made efforts to control her blood sugars while pregnant. On December 16, 2014, she was examined by David Chafin, M.D., and was "praised for keeping her blood sugars within our target range" (Tr. at 783). However, on January 5, 2015, Bonnie Trader, R.N., told Claimant's physician that she had "not reported her blood sugars to the Perinatal Diabetes Center since 12/15/14" (Tr. at 772). Nurse Trader stated that Claimant needed to report blood sugar levels on a weekly basis in order to continue care, however, there is no indication in the record that she followed nurse Trader's advice (Tr. at 773).

At a May 8, 2015, consultative examination with Stephen Nutter, M.D., Claimant complained of persistent leg pain, explaining she believed she was unable to work "mainly [because of] my legs, they hurt all the time" (Tr. at 1024). On examination, Dr. Nutter observed that Claimant was obese, but had a normal station and gait and was comfortable in the supine and seated positions (Tr. 1025). Dr. Nutter observed that "[a]n undilated funduscopic examination reveal[ed] no evidence of hypertensive or diabetic retinopathy" (Tr. at 1026). Dr. Nutter's impressions were as follows: arthralgia and myalgia, chronic lumbar strain, and chest pain (Tr. at 1027). He explained that at 28 years of age, Claimant had some tenderness in her knees, hips, right foot, tibia and calves (Tr. at 1027). There was no evidence of rheumatoid arthritis (Tr. at 1028). Claimant complained of pain, tenderness and a decreased range of motion in her spine, however, her straight leg test was negative, and her grip strength, fine manipulation skills, and sensory and motor modalities were intact. (*Id.*) Dr. Nutter concluded that there was "no evidence of nerve root compression." (*Id.*)

Claimant underwent a psychological examination on May 13, 2015, with Lisa Tate, M.A., at which time she complained of mood swings, panic attacks and hearing voices, but noted that she had not "had time to be depressed" since her son was born (Tr. at 1030). Claimant reported

to caring for her son, cooking meals twice a week, going to doctor's appointments, shopping, playing games on her phone, watching television, and cleaning the house twice a week (Tr. at 1032).

Claimant's grooming and hygiene were appropriate during the exam (Tr. at 1029). Her mood was euthymic, and her affect was broad and reactive and her thought process was logical and coherent (Tr. at 1032). She reported auditory and visual hallucinations, but there was no evidence of hallucinations during her examination, nor was there evidence of delusions, obsessive thoughts, or compulsive behaviors (Tr. at 1032). Claimant's insight was fair, her judgment was moderately deficient, her immediate, recent and remote memory were normal, her concentration was mildly deficient and her psychomotor behavior was normal. (*Id.*)

Ms. Tate diagnosed Claimant with mood disorder with psychotic features. (*Id.*) She suggested intellectual and achievement testing because Claimant "report[ed] a history of special education." (*Id.*) Ms. Tate determined that Claimant's social functioning was within normal limits, as well as her pace and persistence (Tr. at 1033). Claimant's concentration was mildly deficient based on her serial 3s testing; she was able to manage benefits. (*Id.*)

On June 29, 2015, the ALJ sent interrogatories and records to Charles Holland, Ph.D., FAACS, and requested his professional opinion concerning Claimant's mental limitations (Tr. at 1056-1067). Dr. Holland reviewed the record and determined that Claimant suffered from "no medically determinable mental impairment" (Tr. 1078). Dr. Holland commented that, although Claimant had "been diagnosed with a major depressive disorder with psychosis at one time . . . there is significant evidence of inconsistency and contradiction to be found in the record earlier that year. . . ." (Tr. at 583, 1078). Dr. Holland then cited the record evidence to support his conclusion that Claimant did not have a mood disturbance (Tr. 1079-1081). He also opined that

8

Claimant did not have generalized persistent anxiety (Tr. at 1080).

Dr. Holland also completed a mental medical source statement (mental) (Tr. at 1081-1083). He opined that Claimant had "none" or "mild limitations" in five of six functional abilities; concluding that she had only moderate limitations in making judgments on complex work-related decisions (Tr. at 1081). Dr. Holland also opined that Claimant had no limitations in interacting with supervisors and mild limitations in interacting with the public, co-workers and in responding to usual work situations and changes in routine (Tr. at 1082). Dr. Holland opined that Claimant had mild limitations in activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace (Tr. at 1085).

On June 29, 2015, the ALJ sent records and interrogatories to Eric C. Puestow, M.D., for an opinion concerning Claimant's physical limitations (Tr. at 1068). Dr. Puestow provided interrogatory responses and a medical source statement (Tr. at 1069-1077). Dr. Puestow diagnosed Claimant with non-severe hypertension, diabetes and "possible early sensory peripheral neuropathy due to" diabetes (Tr. at 1069). He opined that Claimant did not meet any listings, and when asked for a rationale to support that conclusion, he wrote that "none [were] close" (Tr. at 1070). Dr. Puestow also opined that Claimant had no lifting, carrying, reaching or handling restrictions (Tr. at 1072, 1074) and that she could sit a total of eight hours (four hours at a time) and stand and/or walk for a total of six to eight hours (three hours at a time) (Tr. at 1073).

Dr. Puestow further opined that Claimant could occasionally operate foot controls with both feet because of "possible peripheral neuropathy" (Tr. at 1074) and that she could never climb ladders or scaffolds, and should not be exposed to unprotected heights, again because of her "possible neuropathy" (Tr. at 1075-1076).

Claimant was treated at Huntington Foot and Ankle in September 2015 complaining of pain and a burning sensation in her feet (Tr. at 1089). On examination, epicritic and protective sensation was decreased. (*Id.*) She was diagnosed with diabetic neuropathy, prescribed Neurontin and encouraged to return in four weeks (Tr. at 1089).

## Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ disregarded the findings of Claimant's treating and consulting sources thereby rendering the credibility analysis and residual functional capacity (RFC) analysis "fatally flawed" (ECF No. 9). Claimant asserts that the ALJ disregarded Claimant's request to fully develop the case by means of interrogatories and additional testing. In response, Defendant asserts that Claimant regularly failed to follow physicians' recommendations concerning diabetes management (ECF No. 10). Defendant avers that substantial evidence supports the ALJ's conclusion that Claimant's subjective complaints were only partially credible. Additionally, Defendant asserts that the ALJ satisfied his duty to develop the record, which was complete and sufficient to make the disability determination. (*Id.*)

## Discussion

Claimant asserts that her subjective complaints of pain and other limitations are sufficient to establish that she is disabled in as much as her underlying impairments are capable of producing the degree of pain and other limitations she alleges (ECF No. 9). Claimant refers to the following as objective medical evidence of record that support her subjective complaints of disabling impairments:

1. Stephen Nutter, M.D., a consulting examining physician, prepared an Internal Medicine Examination, dated 05/08/2015, and states that Plaintiff suffers from:

    a. tenderness in the paraspinal muscles and cervical spine
    b. tenderness to the paraspinal muscles and the spinous processes

10

       of the entire dorsal and lumber spine
  c. tenderness in both hips, knees, and right foot
  d. tenderness in calves and tibia bilaterally
  e. some difficulty balancing when performing tandem gait
  f. unable to squat due to knee pain
  g. arthralgia and myalgia
  h. chronic lumbar strain
  i. chest pain with features consistent with angina (Tr. at 1022-1028)

2. Lisa C. Tate, M.A., a consulting examining psychologist, prepared a Psychological Evaluation, dated 05/14/2015, and states that Plaintiff suffers from:

  a. Mood Disorder, Not Otherwise Specified With Psychotic Features, Provisional, and Intellectual and achievement testing is suggested based on Plaintiff s history of special education classes. (Tr. at 1029-1034)

  b. Medical records from University Eye Surgeons, a treating source, dated 08/27/2014, reflect Plaintiff s ocular hypertension and substantiate Plaintiff s allegation that she experiences blurred vision (Tr. at 1037-1042).

<u>Credibility</u>

First, in regards to Claimant's subjective complaints, the Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). In making a credibility determination, the ALJ must follow a two-step analysis. "First, there must be objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis. At step one, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. at 31). Thus, the ALJ proceeded to step two and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." (*Id.*)

The ALJ discussed the objective medical evidence and appropriately concluded that it did not support Claimant's allegations of disability (Tr. at 31-32). *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (stating that the ALJ should examine the alleged severity of a claimant's symptoms against the medical evidence). The ALJ discussed Claimant's repeated failures to follow physician's advice (Tr. 31- at 32). 20 C.F.R. §§404.1530(a)-(b), §§ 416.930(a)-(b) (providing that a claimant must "follow the treatment prescribed by [her] physician" and that failure to do so will result in finding claimants not disabled). Claimant's noncompliance was most pronounced in her repeated failures to comply with her diabetes management. As the ALJ explained, Claimant was often noncompliant when treating with St. Mary's Hospital in 2012 (Tr. at 31). The ALJ discussed Claimant's failure to report her blood sugar levels to the Perinatal Diabetes Center (Tr. at 31). The ALJ also discussed Claimant's failure to take her Metformin in May 2014 (Tr. at 31, 746). There were multiple other instances where Claimant failed to take her diabetes medication in the record (Tr. at 538, 540, 552, 772).

"Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* Although Claimant may disagree with the ALJ's ultimate assessment, that does not mean that the ALJ's decision was erroneous or that Claimant can ask this Court to reweigh the evidence to arrive at a different conclusion.

The ALJ discussed Claimant's testimony, provided why he found Claimant's statements to be only partially credible and identified with specificity the substantial evidence in the record that supported his credibility finding (Tr. at 30-32). Additionally, the ALJ discussed how Claimant's testimony contradicted her alleged limitations (Tr. at 31, 91-92). As the ALJ discussed, Claimant testified that she could do most activities of daily living without significant limitations (*Id.*). Claimant testified that she got up at 6:30 a.m. and drove her husband to work, showered, picked-up around the house, rested, picked her husband up from work, and started cooking dinner (Tr. at 91). Claimant also handled personal hygiene on her own, cooked, cleaned, mopped, and swept (Tr. at 92). This testimony is consistent with what Claimant told Dr. Nutter during her consultative examination—that she had no "time to be depressed" since her son was born (Tr. at 1030). Claimant reported that she cared for her son, cooked meals twice a week, went to doctor's appointments, shopped, played games on her phone, watched television, and cleaned the house twice a week (Tr. at 1032). As a result, the ALJ concluded that Claimant's subjective complaints were inconsistent with her own statements (Tr. at 31). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

The ALJ discussed Claimant's failure to follow her mental health care physicians' instructions as well (Tr. at 28, 723). The ALJ stated that Claimant was discharged from Prestera because she refused further services and failed to follow program rules (*Id.*) *See* (Tr. at 723) (Claimant "rejected additional treatment" and was discharged). Additionally, when Dr. Siford examined Claimant in January 2014, Claimant had "stopped taking those medications [including Prozac for depression] 2 months ago" (Tr. at 766).

Accordingly, the ALJ reasonably relied upon the above inconsistencies in Claimant's subjective reports, as well as her failure to comply with her medical treatments in determining that

subjective presentation appears rather exaggerated in light of the record evidence" (Tr. 31). Substantial evidence supports this conclusion.

The ALJ discussed Dr. Nutter's consultative examination report in his decision (Tr. at 27-28, 31-32, 2011-1028). Significantly, Claimant fails to note that Claimant merely asserts the diagnoses by Dr. Nutter and Ms. Tate, however, neither provided any limitations necessary to perform work. Additionally, Claimant selectively doesn't mention that Dr. Nutter found no evidence of hypertensive or diabetic retinopathy, or rheumatoid arthritis or nerve root compression (Tr. at 1026-1028). Nor did Claimant acknowledge that Ms. Tate determined that Claimant's social functioning, pace, and persistence were within normal limits, and that her concentration was only mildly deficient (Tr. at 1033).

Furthermore, the ALJ extensively discussed Ms. Tate's report and her diagnoses in his decision (Tr. at 28-29). He also cited Ms. Tate's findings in support of his conclusions that Claimant had mild limitations in activities of daily living and concentration, persistence, and pace (Tr. at 29, 1032-1033).

An "individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015) (ALJ appropriately considered claimant's non-compliance as one factor in evaluating credibility). Because substantial evidence supports the ALJ's assessment of Claimant's non-compliance with treatment and credibility, as well as the entirety of the medical evidence, the ALJ's decision should be affirmed.

<u>Record Development</u>

An ALJ has the duty to fully and fairly develop the record, but is not required to act as claimant's counsel. *Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995) (citing *Clark v. Shalala*, 28 F.3d

14

828, 830-31 (8th Cir. 1994)).  Regardless, the burden of producing evidence always lies with the Claimant.  42 U.S.C. § 1382c(a)(3)(H)(i) (applying Section 423(d)(5) to SSI cases) ("An individual shall not be considered under a disability unless [s]he furnishes such medical and other evidence of the existence thereof . . ."). *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) (providing that a claimant bears the burden of providing sufficient evidence to establish entitlement to disability).

In the present case, the ALJ listened to Claimant's testimony concerning her allegedly extreme limitations at the first hearing, examined the limited record in support of her allegations, adjourned the hearing, and sent Claimant for mental and physical consultative examinations.  After receiving the consultative examiner's findings, the ALJ submitted the entire record to two different doctors and asked for their opinions concerning Claimant's alleged limitations.

Claimant declined to provide interrogatories to the medical examiners, instead asking that the interrogatories be sent back to the consultative examiners and requested a second hearing.  The ALJ convened the second hearing, and again heard from Claimant on her allegedly extreme limitations, which were still largely unsupported by the record evidence.  Claimant argues that the ALJ should have sent interrogatories not to the independent medical examiners, but to the prior consultative examiners (ECF No. 9).  This argument fails for several reasons.

The consultative examination reports are not as extreme as Claimant portrays.  Dr. Nutter reported no extreme limitations.  Instead, Dr. Nutter explained that Claimant had some tenderness in her knees, hips, right foot, tibia, and calves, and diagnosed her with arthralgia and myalgia, chronic lumbar strain, and chest pain (Tr. at 1027).  He found that Claimant had a normal station and gait and was comfortable in the supine and seated positions (Tr. at 1025).  He concluded that there was "no evidence of hypertensive or diabetic retinopathy" (Tr. at 1026); no evidence of rheumatoid arthritis; and "no evidence of nerve root compression" (Tr. 1028).  And while Claimant

had spinal tenderness and a decreased range of motion, her straight leg test was negative. (*Id.*) Additionally, Dr. Nutter concluded that Claimant's grip strength, fine manipulation skills, and sensory and motor modalities were all intact. (*Id.*) These findings simply do not support Claimant's allegedly extreme limitations.

Likewise, Claimant's self-reports to Ms. Tate were not as severe as her testimony at the hearings. Claimant told Ms. Tate that she had not "had time to be depressed" since her son was born, and related a large number of daily activities including, caring for her son, cooking meals twice a week, going to doctor's appointments, shopping, playing games on her phone, watching television and cleaning the house twice a week (Tr. at 1030-1032). Nor were Ms. Tate's examination findings supportive of Claimant's allegedly extreme limitations. During the exam, Claimant's grooming and hygiene were appropriate (Tr. at 1029). Her mood was euthymic, and her affect was broad and reactive (Tr. 1032). Her thought process was logical and coherent. (*Id.*) There was no evidence of hallucinations, delusions, obsessive thoughts, or compulsive behaviors during her examination. (*Id.*) Ms. Tate reported that Claimant's insight was fair; her judgment was moderately deficient; and her immediate, recent, and remote memory were normal. (*Id.*) Her concentration was mildly deficient and her psychomotor behavior was normal. (*Id.*)

Dr. Holland repeatedly cited Ms. Tate's examination findings in reaching his conclusion that Claimant had no limitations to mild limitations in her functional abilities, except moderate limitations in the ability to make judgments on complex work-related decisions. (Tr. at 1082). There is very little medical evidence to support Claimant's alleged limitations, even in the evidence that is the focus of her pleading.

Second, even if the reports of Dr. Nutter and Ms. Tate were as extreme as Claimant claims, the ALJ still had substantial evidence to support his conclusion. Claimant suggests otherwise,

16

"[h]ow can a non-examining source (Puestow) trump the findings of an examining source (Nutter)?" The regulations empower the ALJ to make that precise decision. 20 C.F.R. §§ 404.1527, 416.927. Although the findings of examining sources will generally be given more weight, 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1), the ALJ certainly is not required to accept the opinions of examining doctors uncritically. To the contrary, as the fact-finder, the responsibility for deciding issues of disability, including the nature and severity of impairments, is expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). It is well established that the ALJ can rely on the opinion of non-examining medical consultants, over even the opinions of a *treating* physician, if the opinions are consistent with the record. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984); *Smith v. Cohen*, 795 F.2d 343, 346 (4th Cir. 1986). There are no treating physician records here. Instead, as the ALJ observed, Drs. Puestow and Holland had the entire scope of available evidence at the time they rendered their decisions—including the opinions of Dr. Nutter and Ms. Tate (Tr. at 24, 28, 32). Their opinions were consistent with the evidence, and therefore, entitled to great weight.

Furthermore, the ALJ fulfilled his duty to fully develop the record. It is within the discretion of the ALJ to determine whether to obtain a consultative examination. 20 C.F.R. §§ 404.1517, 416.917 ("we may ask you to have one or more . . . mental examinations" if the evidence of record is insufficient to make a decision) (emphasis added); *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) ("[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination.") (citing 20 C.F.R. § 404.1519a). The ALJ need only obtain a consultative examination where the medical and non-medical evidence is insufficient to support a decision on the claim. 20 C.F.R. §§ 404.1519, .1519a, 416.919, .919a.

Claimant's request that interrogatories be sent to the consultative examiners came two months after Dr. Nutter and Ms. Tate offered their opinions (Tr. at 416-17, 1024, 1029), which meant that they would have to conduct new examinations, rely on their memories of their past examination, or review whatever materials they maintained from the initial examination (Tr. at 24). But the ALJ had already adjourned one hearing, offered another, ordered two consultative examinations, and then ordered two more independent medical examiners to evaluate the entire record and offer opinions (Tr. at 251-252). Moreover, Claimant's second hearing did not occur until December 2015—five months after the interrogatories were sent to Claimant's counsel (Tr. at 251-252). Accordingly, Claimant had ample time to seek opinions from her own providers or to elicit other information that would support her claims, yet, she failed to do so.

Finally, Claimant makes a tangential argument that the ALJ should have ordered intellectual testing. The ALJ explained why there was absolutely no need for such testing (Tr. 24). As the ALJ explained, there were no school records in the file, and Claimant testified that she was enrolled in both regular and special education classes (*Id.*) Furthermore, Claimant made no claim for intellectual functioning limitations, she testified that she was in "regular" high school classes and was kicked out for fighting, not because of any intellectual difficulties (Tr. at 70). Claimant also obtained a GED (Tr. at 50, 70), and worked as a caregiver, which the vocational expert explained was performed at Specific Vocational Profile (SVP) of 3 (Tr. at 54-55), which is semi-skilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3 ("Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968 [while] semi-skilled work corresponds to an SVP of 3-4 . . . ."). The record was fully developed on this point and the ALJ made no error in rendering a decision without additional intellectual testing.

Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, the ALJ's decision is supported by substantial evidence, therefore, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 27, 2018.

_____
Dwane L. Tinsley
United States Magistrate Judge